BEATRICE STEENECK ET AL. *v.* UNIVERSITY OF
BRIDGEPORT ET AL.
(15168)

Peters, C. J., and Borden, Berdon, Norcott and Palmer, Js.

Argued September 21—decision released December 19, 1995

*Michael A. Stratton*, for the appellant (plaintiff Ruth Steinkraus Cohen).

*Frederick S. Gold*, with whom were *Ellen A. Jawitz*, and, on the brief, *Robin G. Frederick*, for the appellees (named defendant et al.).

*James R. Fogarty*, with whom was *Carolyn Alexander Collins*, for the appellee (defendant Professors World Peace Academy).

NORCOTT, J. The principal issue in this appeal is whether the plaintiff Ruth Steinkraus Cohen has standing, as a "life trustee" of the University of Bridgeport, to challenge, as ultra vires, certain actions taken by the university's board of trustees. Cohen was one of a group of plaintiffs at trial that included students, donors,

alumni, and a former trustee, who brought this action against the defendants, the University of Bridgeport (university), the university's board of trustees (board) and the Professors World Peace Academy (academy),[1] challenging the validity of a contractual agreement between the university and the academy, and seeking certain declaratory and injunctive relief. The defendants moved to dismiss the action for lack of subject matter jurisdiction, claiming that each of the plaintiffs lacked standing to attack the validity of the agreement. The trial court granted the defendants' motions as to all of the plaintiffs and dismissed the complaint. Only Cohen, the life trustee, appealed from the judgment of the trial court to the Appellate Court. We transferred the appeal to this court, pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The university is a nonstock, nonprofit corporation, originally chartered in 1927 by special act of the legislature to operate a college.[2] The university's internal governance structure is set out in its bylaws. The "rights, powers and privileges" of the university are vested in a board of trustees. The bylaws create three categories of trustees: "term trustees," "life trustees" and "honorary trustees." Term trustees serve four year terms, are counted in determining a quorum of the board, vote on board action, hold office and serve as members and chairpersons of the standing and executive committees.

---

[1] The complaint originally named the state of Connecticut board of governors for higher education as an additional defendant, but the complaint was subsequently withdrawn as to that defendant.

[2] "The purpose of said corporation shall be to establish, organize, maintain and conduct a 'Junior College' as defined by the American Association of Junior Colleges, which institution shall be co-educational and non-sectarian." 20 Spec. Laws 242, No. 217, § 2 (1927). The original charter was subsequently amended to effect a change of name from the Junior College of Connecticut to the University of Bridgeport. 25 Spec. Laws 549, No. 350 (1947).

Life and honorary trustees are deemed to "have all the privileges of a Trustee" but may not "vote, or hold any office or standing committee chair, or be a member of the Executive Committee, nor be counted in determining a quorum."

Cohen was elected life trustee in 1988. As a life trustee, she attended and participated in deliberations at board meetings and served on the academic affairs committee. During 1990 and 1991, the university experienced serious financial distress. After considering a number of options to improve the university's financial position, the board entered into a financial agreement with the academy[3] in May, 1992.[4] At the core of the agreement, relevant to the merits of Cohen's challenge, was the academy's promise to loan the university $50.5 million over several years, which loan would become a grant upon fulfillment of the contract conditions. In exchange for that loan, the university granted the academy a security interest in the university's property and the right, embodied in the university's bylaws, to nominate 60 percent of the board's voting members.

Prior to instituting this action, several of the plaintiffs had brought a substantially similar declaratory judg-

---

[3] The academy is described in the agreement between it and the university as: "a charitable and educational corporation exempt from income taxation under the provisions of Section 501(c) (3) of the [United States Internal Revenue] Code. Among its purposes are the promotion and fostering of international cooperation and peaceful human values and the education of citizens of various nations for peaceful world citizenship. It is the recipient of financial support from individuals and organizations sympathetic to the Unification Church movement founded by the Reverend Sun Myung Moon."

[4] The board first considered a financial agreement with the academy in October, 1991; at that time, Cohen actively urged the board to reject an academy affiliation, which the board did. Cohen claims that she was improperly denied notice of board meetings when an agreement between the university and the academy came under consideration again. Although this claim was made in the trial court, that court did not make any findings or rulings as to it, and Cohen conceded at oral argument in this court that she did not request the trial court to make any findings on that issue. Accordingly, we do not reach it here.

ment action against the university, the board, the academy, and the board of governors for higher education. The trial court, however, had dismissed that action for lack of subject matter jurisdiction owing to the plaintiffs' failure to particularize sufficiently their claim of aggrievement. *Steeneck* v. *University of Bridgeport,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 93 0131577 (July 29, 1993). The original plaintiffs, together with five additional plaintiffs, subsequently instituted the present declaratory judgment action against the same defendants, alleging, inter alia, that the agreement and certain amendments to the university's bylaws implementing the terms of the agreement violated state law, public policy and a charter requirement to operate as a nonsectarian institution. They sought to have the agreement declared invalid and to have the university enjoined from operating and conferring degrees, or, alternatively, to have the court appoint a receiver to remove the present board of trustees and select a new board not affiliated with the academy.

In this case, the defendants again moved to dismiss these claims for lack of subject matter jurisdiction on the basis of lack of standing.[5] In their revised complaint, the plaintiffs claimed to possess "legal and equitable interests which are endangered by reason of [the] agreement and the present governance structure at [the University of Bridgeport] in that . . . Ruth Steinkraus Cohen is a life trustee of [the University of Bridgeport], and as such she has fiduciary duties to the University; she has a property and personal interest in ensuring that the University operates lawfully and in compliance with its charter, and she has a property interest in being

---

[5] The defendants also challenged the trial court's subject matter jurisdiction on the ground that the plaintiffs had failed to exhaust available administrative remedies. The trial court found it unnecessary to reach this ground to dispose of the motions to dismiss that were before it.

notified of the deliberations that she was excluded from that led to the acceptance by [the University of Bridgeport] of the . . . agreement." Following a hearing on issues regarding the student plaintiffs' standing,[6] two of the three student plaintiffs withdrew from the action, and the action was withdrawn as to the board of governors for higher education. In a posthearing brief, Cohen asserted, as an additional basis for permitting herself, as life trustee, to maintain the action, that she had statutory standing under General Statutes § 33-429[7] to challenge the agreement as ultra vires.

The trial court concluded that Cohen had failed to demonstrate a sufficient personal and legal interest in enforcing the operation of the university in accordance with its charter to satisfy the requirements of common law standing. As to statutory standing, the trial court

---

[6] The counsel for Cohen conceded at oral argument in this court that the plaintiffs did not request an evidentiary hearing regarding the standing of Cohen as a life trustee.

[7] General Statutes § 33-429 provides: "Proceedings in event of ultra vires act. No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation itself was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity or power may be asserted: (1) In a proceeding by a member or a director against the corporation to enjoin the doing of any act or acts or the transfer of real or personal property by or to the corporation. If the unauthorized acts or transfer sought to be enjoined are being, or are to be, performed or made pursuant to any contract to which the corporation is a party, the court may, if all of the parties to the contract are parties to the proceeding and if it deems the same to be equitable, set aside and enjoin the performance of such contract and, in so doing, may allow to the corporation or to the other parties to the contract, as the case may be, compensation for the loss or damage sustained by either of them which may result from the action of the court in setting aside and enjoining the performance of such contract, but anticipated profits to be derived from the performance of the contract shall not be awarded by the court as a loss or damage sustained; (2) in a proceeding by the corporation, whether acting directly or through a receiver, trustee or other legal representative, or through members in a representative suit, against any incumbent or former officer or director of the corporation; (3) in a proceeding by the attorney general to dissolve the corporation or to enjoin the corporation from the conduct of unauthorized affairs."

concluded that, even if Cohen could qualify as a "member" of the university,[8] the agreement constituted a completed transaction not subject to ultra vires challenge under § 33-429 and that Cohen lacked statutory standing as well. The trial court concluded that all of the other plaintiffs lacked standing, and thus dismissed the complaint for lack of subject matter jurisdiction. This appeal, by Cohen only, followed.

Cohen argues that the trial court improperly concluded that: (1) she lacked statutory standing under § 33-429 to bring an ultra vires claim; and (2) she was not sufficiently aggrieved by the board's actions to establish common law standing. Specifically, she argues that, as a life trustee, she is properly considered a "director" under § 33-429, and that the question whether the agreement is a completed transaction is a substantive question not properly resolved as a matter of standing. Alternatively, she argues that if she is not a director under § 33-429, she nevertheless has common law standing, either as a fiduciary, or as a party with a "special interest" in the enforcement of the university's charter terms, to maintain an action to enjoin the board's allegedly ultra vires acts. We are unpersuaded by these contentions.

"It is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment." (Internal quotation marks omitted.) *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care*, 218 Conn. 335, 346, 589 A.2d 356 (1991);

---

[8] Cohen did not claim to be a "member" of the university as that term is used in the Nonstock Corporation Act; General Statutes § 33-419 et seq.; as the parties point out, the university has no "members." Rather, as the defendants recognized in their briefs in support of their motions to dismiss, she claimed that, as a life trustee, she was a member of the board of trustees, the equivalent of the "board of directors" under the act, and thus that she was a "director" for purposes of § 33-429.

see Practice Book § 390 (a) and (b).[9] "A party pursuing declaratory relief must . . . demonstrate, as in ordinary actions, a 'justiciable right' in the controversy sought to be resolved, that is, 'contract, property or personal rights . . . as such will be affected by the [court's] decision.' " *Connecticut Business & Industry Assn., Inc.* v. *Commission on Hospitals & Health Care,* supra, 348, quoting *McGee* v. *Dunnigan,* 138 Conn. 263, 267, 83 A.2d 491 (1951). "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the plaintiff has a legally protected interest that the defendant's action has invaded." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 492, 400 A.2d 726 (1978).

Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. Cf. *Zoning Board of Appeals* v. *Planning & Zoning Commission,* 27 Conn. App. 297, 605 A.2d 885 (1992). "The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, 'the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action].' " *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 175 Conn. 493, quoting *Nader* v.

---

[9] Practice Book § 390 provides in relevant part: "The court will not render declaratory judgments upon the complaint of any person: (a) unless he has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to his rights or other jural relations; or (b) unless there is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties . . . ."

*Altermatt,* 166 Conn. 43, 51, 347 A.2d 89 (1974). "The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* supra, 493. "The conclusions reached by the trial court cannot be disturbed on appeal unless the subordinate facts do not support them." (Internal quotation marks omitted.) *Kelly* v. *Freedom of Information Commission,* 221 Conn. 300, 309, 603 A.2d 1131 (1992). Where a plaintiff lacks standing to sue, the court is without subject matter jurisdiction. *Tomlinson* v. *Board of Education,* 226 Conn. 704, 717, 629 A.2d 333 (1993).[10]

## I

## STATUTORY STANDING

The parties agree that the university, as a nonstock, nonprofit corporation, is governed by the Nonstock Corporation Act, General Statutes § 33-419 et seq. (act).[11] Cohen argues that the characteristics of the life trustee position at the university are such that she qualifies as a "director" under the act, and is thus a party specifically authorized under § 33-429 to bring an ultra

---

[10] In addition, this court, sua sponte, directed the parties to brief the issue of whether proper notice was given to interested parties pursuant to Practice Book § 390 (d). We are satisfied that it was.

[11] See General Statutes § 33-421 (f) (" 'Corporation' or 'domestic corporation' means *any corporation without capital stock* formed under the laws of this state, whether this chapter or any other chapter, whether general law or special act, and whether before or after January 1, 1961, but shall not include towns, cities, boroughs or any municipal corporation or department thereof."); S. Cross, Connecticut Corporation Law (1989) § 1.5 ("A 'corporation' defined [under the Nonstock Corporation Act] is any domestic corporation without capital stock, except a municipal corporation. . . . As a general principle, if a corporation has been formed under any Connecticut law and has capital stock, the corporation is governed by [General Statutes §§ 33-282 through 33-418], but if it does not have capital stock, then [General Statutes §§ 33-419 through 33-526] apply unless the corporation is a municipal or specially chartered insurance company . . . ."); id., c. 14 (indicating Nonstock Corporation Act applies to wide variety of nonstock corporations, including nonprofit corporations).

vires challenge to the board's actions with regard to the agreement.[12] We agree with the defendants that a life trustee is not a director for purposes of the act, and thus Cohen's claim to statutory standing fails.

In construing statutes, our goal is to discern and give effect to the apparent intent of the legislature. See *State* v. *Kozlowski*, 199 Conn. 667, 673, 509 A.2d 20 (1986); *Hayes* v. *Smith*, 194 Conn. 52, 57, 480 A.2d 425 (1984). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 231 Conn. 418, 431–32, 650 A.2d 557 (1994); *Fleming* v. *Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994); *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994); *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764, 628 A.2d 1303 (1993).

The term "director" is not defined in the act;[13] however, the term "board of directors" is defined as "the group of persons vested with the management of the affairs of a corporation irrespective of the name by which such group is designated." General Statutes § 33-421 (b); cf. General Statutes § 33-447 (a) ("[s]ubject to any provisions pertaining thereto contained in the certificate of incorporation, the activities, property and affairs of a corporation shall be managed by its board of directors"). This general, functional definition, and the more specific aspects of the role of a director contemplated by the act; see, e.g., General Statutes § 33-455 (voting rights and director liability); General Stat-

---

[12] See footnote 7.

[13] "Directorship" is defined as "the office of a director." General Statutes § 33-421 (g).

utes § 33-473 (b) (2) (same); General Statutes § 33-447 (d) (standards of performance of management duties); reflect the common understanding that directors of a corporation are persons charged, as members of a body that acts collectively on behalf of the corporation, with both authority, ordinarily including voting power, and responsibility for conducting its affairs, and are subject to corresponding liability, collectively and individually, for the exercise of that authority and the discharge of management responsibilities.[14]

To determine whether Cohen, as a life trustee, qualifies as a director under the act, we look to the university's bylaws. In this regard, we note that the act clearly envisions that individual corporations may deviate from the simple, traditional framework it recognizes for corporate management. See General Statutes § 33-420.[15]

---

[14] See, e.g., 18B Am. Jur. 2d, Corporations § 1484 (1985) ("The directors convened as a board are the primary possessors of all of the powers the charter confers and powers conferred upon a board of directors usually refer to the ordinary business transactions of the corporation. Unless their authority is restricted, the directors have plenary authority to transact all the ordinary business of the corporation within the scope of its charter powers, and what they do within the scope and purposes of the corporation, the corporation does. In short, the directors of a corporation are its executive representatives, charged with the administration of its internal affairs and the management and use of its assets. . . .")and § 1684 ("The posts of directors and executive officers of corporations carry with them certain duties attendant upon the management of the affairs of the corporation and the custody and use of its assets. The directors and officers of a corporation in charge of its management are, in the performance of their official duties, under obligations of trust and confidence to the corporation or its stockholders and must act in good faith and for the interests of the corporation or its stockholders, and within the scope of their authority. It is the duty of directors to see that a corporation keeps within its corporate powers and obeys the law. . . .").

[15] General Statutes § 33-420 provides: "This chapter shall be construed as to provide for a general corporate form for the conduct of lawful activities with such variations and modifications from the form so provided as the interested parties may agree upon, subject to the interests of the state and third parties. Whether or not a section of this chapter shall contain the words 'unless the certificate of incorporation or bylaws otherwise provide', or words of similar import, no provision of a certificate of incorporation or

Thus, corporations may and, as in the present case, do create positions that possess some but not all of the attributes traditionally associated with directorship. While we do not identify here a specific formula or combination of management qualities that will suffice to render a person in such a position a director under the act,[16] we acknowlege the defendants' concern that the ability attached to director status to bring an ultra vires challenge, and thereby frustrate major corporate initiatives approved by a majority of the managing board, is a significant power, of potentially great consequence for the corporation.

Ultimately, the question to be considered in determining the status of one who claims to be a director under the act is whether that person is intended to have a significant managerial role in the corporation's affairs. The corporate bylaws and certificates of incorporation typically do not specifically address the power to bring an ultra vires challenge. Therefore, it is appropriate, in evaluating whether a position qualifies as a directorship, to focus on the nature of its role within the corpo-

bylaw shall be held invalid on the ground that it is inconsistent with such section unless such section expressly prohibits variations therefrom, or prescribes minimum or maximum numerical requirements or a substantial interest of the state or third parties is adversely affected thereby." See also S. Cross, Connecticut Corporation Law (1989) § 1.4 ("The first substantive section of each of the Stock and Nonstock Corporation Acts sets forth the broad, liberal policy of permitting 'interested parties' to agree upon variations and modifications from the corporate form provided by the code. . . . The practical effect of these sections is to afford considerable latitude to the parties to a corporate venture to design an enterprise to fit their particular needs, without statutory encumbrance.").

[16] We need not decide in this case, as the defendants urge, whether the unqualified right to vote on board action is an essential attribute of directorship. Although we recognize that it is an ordinary incident of that status and the ordinary means by which to exercise authority, we also recognize that the act has application to a great variety of nonstock corporations, and so we do not foreclose the possibility that an organization governed by the act may present a unique situation in which voting rights have less significance for director status than is ordinarily the case.

ration, and to require the party outside of the traditional management framework to demonstrate that his or her position carries the ability, in some substantial sense, to direct the corporation's operation and future.

Our review of the university's bylaws, together with the limited record provided us by Cohen on this issue, leads us to conclude that the life trustee position is largely an honorary one, to which genuine and substantial management functions do not attach. Article II, § 1, of the university's bylaws, which addresses the powers of the board, provides in pertinent part: "All of the rights, powers and privileges of this Corporation, and of the incorporators thereof, are hereby vested in a Board of Trustees to consist of not fewer than eleven (11), nor more than thirty-nine (39) persons, not including Life or Honorary Trustees." Cf. General Statutes § 33-448 (b) (permitting bylaws to fix number of directorships, absolutely or by listing minimum and maximum number). Although this provision does not necessarily render the life trustee a nonmember of the board; cf. bylaws, art. II, § 8 ("[a] quorum of the Board of Trustees shall consist of thirty percent [30%] of the members of the Board eligible to vote but not less than seven [7] *voting members*"[emphasis added]); bylaws, art. V (addressing membership on standing committees in terms of "voting members" and simply "members"); it indicates at least that life trustees are different from term trustees for some purposes.

Article II, § 3, of the bylaws specifically describes the functions of the life trustee: "A Life Trustee shall have all the privileges of a Trustee, except that such Life Trustee may not vote or hold any office or standing committee chair, or be a member of the Executive Committee, nor be counted in determining a quorum." This provision confirms that the life trustee's functions as a member of the board are severely limited. Cohen concedes that she is prohibited completely from voting

on any action proposed to be taken by the board. Moreover, both parties agree that her role on the board is limited to attending board meetings and participating in the board's deliberations. Further, she is unambiguously excluded from membership on the executive committee, a body generally recognized as a subgroup of the corporation's board of directors created in order to exercise, to some extent, the board's authority to act on behalf of the corporation. See General Statutes § 33-452. As to standing committees, it is not clear from the bylaws that a life trustee may serve as a member of any committee besides the academic affairs committee, or that a life trustee may vote as a member of any standing committee.[17] Although the counsel for Cohen suggested at oral argument that the bylaws *could* be read to permit both membership and voting rights on all of the standing committees, he presented no evidence to support that reading, such as a practice or example in the university's history under these bylaws of either event taking place, and we are not persuaded on this record that it is the most sensible reading.

In sum, we conclude that in creating the life trustee position, the university intended to establish a role restricted to influencing board action by persuasion rather than by the exercise of power, and unencumbered by traditional management responsibilities. Although participation in board and certain committee

---

[17] The bylaws addressing each standing committee, except for the academic affairs committee, expressly require membership of voting members. Cohen testified that as a life trustee she served on the academic affairs committee; she did not indicate that she had served on any other standing committee.

With regard to voting rights, as indicated previously, article II, § 3, of the bylaws provides that the life trustee, although otherwise possessed of the privileges of a trustee, "*may not vote* or hold any office or standing committee chair." (Emphasis added.) Cohen also testified that as a life trustee she did not vote. The parties disagree whether that statement referred to voting in every context, including the academic affairs committee, or simply in the context of action proposed to be taken by the board of trustees.

deliberations is an important function, potentially of great value both to the university and the individual, we cannot say that it is sufficient to render a position limited to those functions one of a true director. As such, Cohen is not properly considered a "director" under the act, and thus does not have statutory standing under § 33-429 to bring suit to enjoin acts of the university as ultra vires.[18]

## II

## COMMON LAW STANDING

Cohen next claims that even if she lacks statutory standing as a director under the act, she nevertheless has common law standing, either as a fiduciary or as a party with a "special interest" in the administration of the university in accordance with its charter, to maintain an ultra vires challenge to the university's actions. Her claim is premised on the legal trend, with regard to charitable organizations, to extend principles of trust law applicable to charitable trusts to charitable corporations. See 2 Restatement (Second), Trusts § 348, comment (f) (1959) ("[o]rdinarily the principles and rules applicable to charitable trusts are applicable to charitable corporations").

Cohen relies primarily on *Holt* v. *College of Osteopathic Physicians & Surgeons*, 61 Cal. 2d 750, 394 P.2d 932, 40 Cal. Rptr. 244 (1964), in which the California Supreme Court considered whether minority trustees of the College of Osteopathic Physicians and Surgeons, a charitable corporation, had the capacity to sue the corporation's majority trustees to enjoin an allegedly improper use of corporate assets in breach of a charita-

[18] Because we determine the threshold question of Cohen's status under the act against her, it is unnecessary to reach her claim that the trial court improperly considered, for purposes of standing, and incorrectly resolved, whether the challenged action had been completed, and thus could not be challenged as ultra vires.

ble trust.[19] In light of the similarity in functions between a charitable trust and a charitable corporation, and between the roles of a trustee of a charitable trust and a director of a charitable corporation; (both are "solely responsible for administering the trust assets . . . and in both cases they are fiduciaries in performing their trust duties"; id., 756); the California court concluded that the principle of trust law that "the Attorney General does not have exclusive power to enforce a charitable trust and that a trustee or other person having a sufficient special interest may also bring an action for this purpose" was properly applied to charitable corporations. Id., 753.[20] As a result, the court held that the minority trustees of the defendant charitable corporation, as "fiduciaries who are both few in number and charged with the duty of managing the charity's affairs"; (internal quotation marks omitted) id., 755; had the capacity to maintain the action.

Cohen's reliance on the extension of trust principles to charitable corporations is unavailing. It is evident from *Holt* that its holding is premised on the determination that directors of a charitable corporation are analogous to actual trustees of a charitable trust. Because of their substantially similar roles, it may well be appropriate to treat charitable corporation directors like actual trustees for purposes of standing to enforce the charity's purposes. Even if it is assumed that the university is a charitable corporation; but see *Common Fund* v. *Fairfield*, 228 Conn. 375, 636 A.2d 795 (1994); Cohen's "common law" standing claim, which appears to have been incorporated in § 33-429, fails for the same reasons as did her claim to statutory standing: according to the

[19] The *Holt* plaintiffs objected to a change in the college's curriculum from exclusively osteopathic to include allopathic medicine.

[20] See *Belcher* v. *Conway*, 179 Conn. 198, 206, 425 A.2d 1254 (1979) (recognizing trust principle that trustee may bring action against cotrustees to enjoin breach of trust or compel performance of duty, based on fiduciary duty owed to beneficiaries by each trustee).

university's bylaws, she is not "charged with the duty of managing the charity's affairs"; (internal quotation marks omitted) *Holt* v. *College of Osteopathic Physicians & Surgeons*, supra, 61 Cal. 2d 755; and is thus neither a true trustee, nor a director, of the university. Cohen does not offer, nor do we find, any application of this approach to an individual accorded only the ability to deliberate with the board of directors.

Cohen also claims common law standing under a "special interest" exception to the general rule that beneficiaries of a charitable trust may not bring suit to enforce the trust, but rather are represented exclusively by the attorney general. See *Jones* v. *Grant*, 344 So. 2d 1210, 1212 (Ala. 1977) (adopting rule that "beneficiaries with a sufficient special interest in the enforcement of a charitable trust can institute a suit as to that trust," and finding that, where grants and loans made to institution were for purpose of upgrading faculty, staff, and student body, those parties have sufficient special interest); *Hooker* v. *Edes Home*, 579 A.2d 608 (D.C. App. 1990) (recognizing principle that beneficiaries with "special interest" in charitable trust may sue to enjoin breach of trust); *Y.M.C.A. of Washington* v. *Covington*, 484 A.2d 589 (D.C. App. 1984) (same); 2 Restatement (Second), Trusts § 391 (1959). We agree with the defendants that, even if a right of action in favor of those who benefit from the operation of a charitable corporation survived passage of § 33-429,[21] and the university is such a corporation, Cohen does not claim to be a beneficiary of the university, much less one with a "special interest" distinguishing her from other members of the public, nor does she point to any authority that suggests that the "special interest" doctrine has any application to a party in her role at the university.

---

[21] We need not and do not reach the question whether the authorization of specific parties under § 33-429 to bring an ultra vires claim is exclusive.

We conclude that Cohen has failed to satisfy her burden of demonstrating standing under either § 33-429 or the theories of common law aggrievement advanced. If a plaintiff lacks standing to sue, the court is without subject matter jurisdiction. *Tomlinson* v. *Board of Education,* supra, 226 Conn. 717. The complaint was properly dismissed as to the life trustee.

The judgment is affirmed.

In this opinion PETERS, C. J., and BORDEN and PALMER, Js., concurred.

BERDON, J., dissenting. The plaintiff Ruth Steinkraus Cohen, a lifetime trustee of the defendant University of Bridgeport (university), has standing to bring this claim challenging the alleged ultra vires agreement between the university and the Professors World Peace Academy (academy). Her standing is based upon both the Nonstock Corporation Act (act); General Statutes § 33-419 et seq.; and the common law.

It is clear that the determination of whether Cohen has standing must be viewed in the context of the allegations of the complaint. Chief Justice Peters, writing for a unanimous court, pointed out in *Maloney* v. *Pac,* 183 Conn. 313, 321 n.6, 439 A.2d 349 (1981), that standing "requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by *allegations* of injury. Similarly, standing exists to attempt to vindicate 'arguably' protected interests. *Ducharme* v. *Putnam,* 161 Conn. 135, 139, 285 A.2d 318 (1971); see also *Assn. of Data Processing Service Organizations* v. *Camp,* 397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970)." (Emphasis in original.) We, therefore, must review this issue within the context of the allegations of the complaint.

On May 5, 1927, the state of Connecticut granted the university a charter requiring that it be operated as a

nonsectarian educational institution. Cohen alleges that the agreement entered into between the academy and the university constitutes an ultra vires act in part because it renders the university a sectarian institution. The academy was founded by the Reverend Sun Myung Moon to further the goals of the Unification Church, which are to create a worldwide theocracy and to abolish the separation of church and state. Moreover, it is alleged that the $50,500,000 loan given by the academy to the university under the terms of the agreement was financed by the Unification Church. In return for the loan, the agreement, among other things, empowers the academy to select in perpetuity 60 percent of the seats on the board of trustees of the university. In addition to violating the university's charter, Cohen's complaint avers that the validity of the agreement is marred by conflicts of interest. Among the conflicts alleged, Cohen asserts that the trustees of the university "had personal financial interests in enforcing the agreement with the [academy] and the Unification Church in that said agreement relieves the trustees individually for liability stemming from their use of restricted endowment and scholarship funds." Due to these alleged improprieties and ultra vires acts, Cohen seeks, among other things, a judgment declaring the agreement to be void.

Although absent from the majority's opinion, the analysis of whether Cohen has standing should begin with our time honored rule that "[s]tanding is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Internal quotation marks omitted.) *Board of Pardons* v. *Freedom of Information Commission*, 210 Conn. 646, 648–49,

556 A.2d 1020, on remand, 19 Conn. App. 539, 563 A.2d 314, cert. denied, 212 Conn. 819, 565 A.2d 539 (1989). Standing, therefore, is not to be a review of the merits. *United States* v. *Williams,* U.S. , 115 S. Ct. 1611, 1615 n.2, 131 L. Ed. 2d 608 (1995) ("[t]he sole issue in this case, however, is whether one in [the plaintiff's] situation has standing to sue . . . and to that issue the strength of [the plaintiff's] case on the merits is not relevant"). Rather standing is merely a preliminary inquiry. Indeed, it should be remembered that an individual may have standing to bring a meritless claim.

I

As the majority notes, the bylaws of the university create a board of trustees comprised of three distinct positions that constitute the institution's governance: "term trustees," "life trustees" and "honorary trustees." Life trustees are vested, under the bylaws, with "all the privileges of a Trustee," but may not "vote or hold any office or standing committee chair, or be a member of the Executive Committee, nor be counted in determining a quorum." In this case, Cohen was made a life trustee in 1988.

The parties agreed that the university is subject to the act. Under the act, standing is granted to both "directors" and "members"[1] of a nonstock corporation to bring an action to enjoin the corporation from performing ultra vires acts. General Statutes § 33-429. The university's bylaws, however, do not employ the term "director." Nevertheless, the majority concedes, and the parties agree, that the "term trustees" of the university are the functional equivalent of "directors" for purposes of the act. It must therefore be determined whether a "life trustee" may also be considered a "director" for the purposes of standing under the act. If stand-

[1] Cohen does not claim that she is a "member," for as she indicates, the university has no "members."

ing is not to be employed as a technical bar, then the statute permitting standing in order to challenge an ultra vires act should be broadly construed.

Although "director" is not defined in the act, "board of directors" is defined as "the group of persons vested with the management of the affairs of a corporation . . . ." General Statutes § 33-421 (b). Today, this court has decided to define "director" as one who has a "significant managerial role in the corporation's affairs." This definition was not advanced by either party, nor is any authority cited in its support. Nevertheless, Cohen, in her capacity as a life trustee, has a "significant managerial role" within the board of trustees, the body charged with managing the affairs of the university. Despite the fact that life trustees do not have the same responsibilities as term trustees,[2] including the right to vote, Cohen, nevertheless actively exercised her right to participate in the board of trustees' deliberations and served on the board's important academic affairs committee.[3] Furthermore, her input was critical when the board of trustees first rejected the agreement that was eventually entered into with the academy.

It is also clear that, in granting standing to a mere "member" of a nonstock corporation who has no role in the management of the affairs of the corporation;

---

[2] Article II, § 3, of the university's bylaws provides: "There is hereby created a category of Life Trustee. A Life Trustee shall have all the privileges of a Trustee, except that such Life Trustee may not vote or hold any office or standing committee chair, or be a member of the Executive Committee, nor be counted in determining a quorum."

[3] Article VI, § 3, of the university's bylaws provides: "The Academic Affairs Committee shall be responsible for all matters of general policy relating to the educational program. This Trustee committee's concerns shall include general educational philosophy (especially as it relates to long-range goals), the academic structure of the total institution, administration-faculty relationships, the development of new or phasing out of old academic programs, and national educational trends which might or should impact on the University. The Committee shall also recommend candidates for honorary degrees to the Board of Trustees."

see *Sterner* v. *Saugatuck Harbor Yacht Club, Inc.,* 188 Conn. 531, 535, 450 A.2d 369 (1982); the legislature could not have intended to deny a nonvoting trustee statutory standing under the act. Statutory construction requires us "to construe a statute in a manner that will not thwart its intended purposes or lead to absurd results." *Turner* v. *Turner,* 219 Conn. 703, 712, 595 A.2d 297 (1991). In light of the fact that a mere "member" has standing to enjoin ultra vires acts, it is absurd for this court to require that a life trustee must have "significant managerial" powers or the right to vote before her standing will be recognized.[4] See *Skokie Valley Professional Building* v. *Skokie Valley Community Hospital,* 74 Ill. App. 3d 569, 573, 393 N.E.2d 510 (1979) (right to vote is not a litmus test for a "member" to have standing).

Notwithstanding the broad scope of § 33-429 and the fact that our policy for finding standing should be liberally exercised, the majority concludes, without citation to any authority, that because Cohen serves as a nonvoting trustee, she is not a party authorized to bring suit. I disagree.

II

In addition to her statutory standing under the act, I also conclude that Cohen has standing under the common law by virtue of her position as a trustee. The law is restated as follows: "A suit can be maintained for the enforcement of a charitable trust by the Attorney General or other public officer, *or by a co-trustee,* or by a person who has a special interest in the enforcement of the charitable trust . . . ." (Emphasis added.) 2 Restatement (Second), Trusts § 391 (1959). This rule of trustee standing has equal application to the trustee of a charitable corporation. " 'The cotrustee is also in

---

[4] Although the court, in footnote 18 of the majority opinion, states that the right to vote is not an essential attribute of a "director," it certainly appears that Cohen's nonvoting status was dispositive in this case.

the best position to learn about breaches of trust and to bring the relevant facts to a court's attention.' " *Holt* v. *College of Osteopathic Physicians & Surgeons*, 61 Cal. 2d 750, 756, 394 P.2d 932, 40 Cal. Rptr. 244 (1964), quoting K. Karst, "The Efficiency of the Charitable Dollar: An Unfulfilled State Responsibility," 73 Harv. L. Rev. 433, 444 (1960) (minority member of board of trustees of university has standing to bring suit to enforce charitable purpose); see *Trustees of Dartmouth College* v. *Woodward*, 17 U.S. 518, 645, 4 S. Ct. 526, 4 L. Ed. 629 (1819). Similarly in this case, Cohen served as a trustee of the university, a charitable corporation, and as such was in an optimal position to detect whether the corporation was acting in an impermissible manner. Therefore, Cohen should be granted the same standing as would be accorded a cotrustee of a charitable trust.

When Cohen accepted the position of life trustee she was bestowed with certain privileges and in return she bore certain responsibilities, one of which was to ensure that the university, through its board of trustees, acted in an appropriate and beneficial manner. Cohen alleges that the term trustees, who allegedly have serious conflicts of interest, voted to enter into an agreement that directly contradicts the university's charter, which mandates that the institution remain nonsectarian. Indeed, the agreement allegedly places the university under the control of the academy whose mission is to advance the goals of the Unification Church.

The majority holds that, as a life trustee, Cohen is powerless to access the machinery of the court in order to prevent the university from engaging in ultra vires conduct. This cannot be the case. In the context of this case, any difference between a "life trustee" and a "cotrustee" is merely semantical. Therefore, I believe that Cohen has both statutory standing as a "director"

and common law standing as a trustee to maintain the action.

Accordingly, I respectfully dissent.