In this opinion the other justices concurred.

ANN ST. GEORGE ET AL. *v.* ABRAHAM I. GORDON, EXECUTOR (ESTATE OF EDWIN MAK), ET AL.
(SC 16673)

Sullivan, C. J., and Borden, Norcott, Katz and Vertefeuille, Js.

*(Three justices concurring in two separate concurring opinions; one justice dissenting)*

Argued January 10—officially released July 1, 2003

*Anthony F. Slez, Jr.*, for the appellants (plaintiffs).

*Ronald D. Japha*, for the appellant (named defendant).

*Gregory T. D'Auria*, associate attorney general, with whom were *Eliot D. Prescott*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Jane R. Rosenberg*, assistant attorney general, for the appellees (defendant Nancy Wyman et al.).

*Opinion*

VERTEFEUILLE, J. The plaintiffs and the named defendant, Abraham I. Gordon, executor of the estate of Edwin Mak,[1] jointly appeal from the judgment of the trial court dismissing the plaintiffs' complaint and Gordon's cross claim in this action for indemnification

---

[1] The plaintiffs in this action are Ann St. George, a former special deputy sheriff; Susan Baines, the administrator of the estate of former special deputy sheriff Louis Lewis; Anthony Slez, Jr., the attorney for St. George in the federal court action; and Kevin Boyle, Baines' attorney in the federal court action. The defendants are: Gordon, as executor of the estate of Mak, who died on November 20, 1999, after the federal action had been initiated; Nancy Wyman, the state comptroller; and Richard Blumenthal, the attorney general. We will refer to Wyman and Blumenthal together as the "state defendants." Gordon filed a cross claim against the state defendants seeking a declaratory judgment that Mak's estate should be indemnified by the state for the federal court judgment.

brought pursuant to General Statutes § 5-141d.[2] The plaintiffs brought this action seeking a declaratory judgment that they should be indemnified by the state for a judgment rendered in their favor in the United States District Court for the District of Connecticut against Mak, the former high sheriff for Fairfield County. The trial court granted the motions to dismiss filed by the

[2] General Statutes § 5-141d provides: "(a) The state shall save harmless and indemnify any state officer or employee, as defined in section 4-141, and any member of the Public Defender Services Commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious.

"(b) The state, through the Attorney General, shall provide for the defense of any such state officer, employee or member in any civil action or proceeding in any state or federal court arising out of any alleged act, omission or deprivation which occurred or is alleged to have occurred while the officer, employee or member was acting in the discharge of his duties or in the scope of his employment, except that the state shall not be required to provide for such a defense whenever the Attorney General, based on his investigation of the facts and circumstances of the case, determines that it would be inappropriate to do so and he so notifies the officer, employee or member in writing.

"(c) Legal fees and costs incurred as a result of the retention by any such officer, employee or member of an attorney to defend his interests in any such civil action or proceeding shall be borne by the state only in those cases where (1) the Attorney General has stated in writing to the officer, employee or member, pursuant to subsection (b), that the state will not provide an attorney to defend the interests of the officer, employee or member, and (2) the officer, employee or member is thereafter found to have acted in the discharge of his duties or in the scope of his employment, and not to have acted wantonly, recklessly or maliciously. Such legal fees and costs incurred by a state officer or employee shall be paid to the officer or employee only after the final disposition of the suit, claim or demand and only in such amounts as shall be determined by the Attorney General to be reasonable. In determining whether such amounts are reasonable the Attorney General may consider whether it was appropriate for a group of officers, employees or members to be represented by the same counsel.

"(d) The provisions of this section shall not be applicable to any state officer or employee to the extent he has a right to indemnification under any other section of the general statutes."

state defendants; see footnote 1 of this opinion; based on lack of standing and the bar of sovereign immunity. We affirm the judgment of the trial court.

The trial court's memorandum of decision sets forth the following relevant facts and procedural history. "On March 31, 1999, in consolidated cases brought pursuant to 42 U.S.C. § 1983,[3] the United States District Court for the District of Connecticut found in favor of [Ann] St. George and [Louis] Lewis and against Mak on St. George and Lewis' claims that Mak violated their rights under the first amendment to the United States constitution by taking adverse employment action against them in retaliation for their union organizing activities. [Anthony Slez, Jr.] and [Kevin] Boyle represented St. George and Lewis in their suit against Mak. The office of the attorney general . . . initially represented Mak in the case but later withdrew pursuant to § 5-141d (b). On February 15, 2000, judgment was entered in the [federal] case for [St. George and Lewis] in the amount of $301,696.47, which amount included attorney's fees, costs and prejudgment interest. The plaintiffs thereafter filed a claim against Mak's estate, which claim was allowed by the executor, Gordon, in the amount of $301,696.47. The estate, however, is without funds to satisfy the plaintiffs' claim. On September 8, 2000, the plaintiffs, together with Gordon, made a demand for payment on the judgment upon [Wyman] pursuant to § 5-141d (a) and General Statutes § 3-112, which

_____

[3] Section 1983 of title 42 of the United States Code provides in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

demand has not been paid.[4] The plaintiffs commenced this action thereafter on December 14, 2000. On February 26, 2001, Gordon filed a cross claim against the [state defendants], in which he also seeks a declaratory judgment as to whether the estate of Mak, through Gordon as executor, is entitled to indemnification [for] the federal court judgment against Mak.

"On May 15, 2001, the [state defendants] filed these motions to dismiss both the plaintiffs' complaint and Gordon's cross claim. The [state] defendants [moved] to dismiss the plaintiffs' complaint on the grounds that (1) the plaintiffs lack standing to bring their claims; (2) their claims are barred by the principles of sovereign immunity; and (3) they have failed to pursue remedies under General Statutes § 4-141[5] et seq. The [state] defendants [moved] to dismiss Gordon's cross claim on the ground of sovereign immunity as well as on the ground that he failed to pursue remedies under § 4-141 et seq."

The trial court granted both motions to dismiss. First, the trial court concluded that the plaintiffs lacked standing to seek indemnification under § 5-141d because the statute does not provide any rights for creditors of a state employee. Next, the trial court concluded that Gordon's cross claim was barred by sovereign immunity. This appeal by the plaintiffs and Gordon followed.[6] On appeal, the plaintiffs and Gordon contend that the trial court improperly concluded that the plaintiffs

[4] In a letter to Representative G. Kenneth Bernhard dated April 17, 2000, attorney general Richard Blumenthal explained that the state was not obligated to pay the judgment against Mak pursuant to § 5-141d because Mak had not been acting in the discharge of his duties or within the scope of his employment when he violated the first amendment rights of St. George and Lewis.

[5] Chapter 53 of the General Statutes details how to file a claim against the state with the claims commissioner. See General Statutes § 4-141 et seq.

[6] The plaintiffs and Gordon jointly appealed from the trial court judgment to the Appellate Court. We transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

lacked standing and that the doctrine of sovereign immunity barred the cross claim.[7] We disagree. Accordingly, we affirm the judgment of the trial court.

I

The plaintiffs first claim that the trial court improperly concluded that they lacked standing to bring this action for indemnification under § 5-141d and General Statutes § 3-112.[8] Specifically, the plaintiffs contend that standing is not one of the five permitted grounds for which an action may be dismissed under Practice Book § 10-31, and, further, that § 5-141d, by necessary implication, gives the plaintiffs standing to make a claim for indemnification. The state defendants counter that a motion to dismiss is proper when a party lacks standing and that the plaintiffs here lacked standing because any right to indemnification pursuant to § 5-141d is vested in the state employee himself or herself, and not in the creditors of that state employee.[9] We agree with the state defendants.

We begin by setting forth the standard of review that governs our analysis of this issue. The issue of standing implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. Practice Book § 10-31 (a). "[I]t is the burden of the party who seeks

[7] The plaintiffs and Gordon also claimed that the trial court erred in dismissing the case because the trial court made a "quasi-declaration of rights" without holding a full evidentiary hearing, and that the trial court improperly interpreted § 5-141d, erroneously delegating judicial and legislative power to the attorney general. We need not address these two claims because we conclude that the plaintiffs lacked standing to bring this action and that Gordon's cross claim is barred by sovereign immunity.

[8] While General Statutes § 3-112 outlines the legal authority of the state comptroller with regard to the fiscal affairs of the state, that statute does not create a right to indemnification. Our analysis of the plaintiffs' indemnification therefore focuses on § 5-141d.

[9] The state defendants challenge only the plaintiffs' standing. Gordon has standing to make a claim under § 5-141d because he is the representative of Mak's estate.

the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *State* v. *McElveen*, 261 Conn. 198, 210, 802 A.2d 74 (2002); *Steeneck* v. *University of Bridgeport*, 235 Conn. 572, 579, 668 A.2d 688 (1995). Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary. *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410, 722 A.2d 271 (1999); *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998).

The plaintiffs' claim that lack of standing cannot be raised by a motion to dismiss is clearly without merit. Pursuant to the rules of practice, a motion to dismiss is the appropriate motion for raising a lack of subject matter jurisdiction. Practice Book § 10-31 (a) provides in relevant part: "[A] motion to dismiss shall be used to assert (1) lack of jurisdiction over the subject matter . . . ." Because a lack of standing deprives the court of subject matter jurisdiction, the trial court properly entertained the state defendants' motion to dismiss.

"This court has had many opportunities to determine what constitutes standing. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Gay & Lesbian Law Students Assn.* v. *Board of Trustees*, 236 Conn. 453, 466, 673 A.2d 484 (1996); accord *Presidential Capital Corp.* v. *Reale*, 231 Conn. 500, 504, 652 A.2d 489 (1994).

In order to determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was

designed to protect. See *Steeneck* v. *University of Bridgeport,* supra, 235 Conn. 579. "Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth* v. *Seldin,* 422 U.S. 490, 500, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975). The plaintiff must be within the zone of interests protected by the statute. *United Cable Television Services Corp.* v. *Dept. of Public Utility Control,* 235 Conn. 334, 345, 663 A.2d 1011 (1995).

The fact that the plaintiffs in the present case seek only declaratory relief does not relieve them of the obligation to establish standing in order to maintain an action in the court. See *Steeneck* v. *University of Bridgeport,* supra, 235 Conn. 578–79. "It is a basic principle of our law . . . that the plaintiffs must have standing in order for a court to have jurisdiction to render a declaratory judgment." (Internal quotation marks omitted.) Id., 578.

In the present case, we must determine whether the plaintiffs, as judgment creditors of a state employee, are within the zone of interests protected by § 5-141d. That statute provides in relevant part: "The state shall . . . indemnify any state officer or employee . . . from financial loss and expense arising out of any claim, demand, suit or judgment . . . if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment . . . ." General Statutes § 5-141d (a). The language expressly vests any right provided by § 5-141d in the state officer or employee against whom the claim is made or suit is brought. In this case, the statutory rights were vested in Mak as the high sheriff, and now are vested in Gordon in his representative capacity of Mak's estate. We previously stated in our opinion in *Hunte* v. *Blumenthal,* 238 Conn. 146, 153, 680 A.2d 1231 (1996),

that the "manifest policy motivating [§ 5-141d is] the protection of state employees from liability for negligent acts that occur in the course of employment." Section 5-141d makes no mention of indemnifying third parties or third party creditors of state officers or employees. The plaintiffs are not within the zone of interests that § 5-141d expressly protects. Furthermore, we are not aware of any authority, legislative history or any other evidence, nor have the plaintiffs provided us with any, that demonstrates that the legislature intended to allow a third party creditor to make an indemnification claim pursuant to § 5-141d.[10]

We conclude that the trial court properly determined that the plaintiffs lack standing to make a claim against the state for indemnification pursuant to § 5-141d. Accordingly, the trial court properly dismissed the complaint in the underlying action.

## II

We next turn to Gordon's contention that the trial court improperly concluded that the doctrine of sovereign immunity barred his cross claim against the state defendants. Gordon asserts that his claim for indemnification against the state is not barred by sovereign immunity because § 5-141d authorizes suit against the state by necessary implication. Although § 5-141d does not authorize suit expressly, Gordon claims that the ability to bring suit against the state must be implied, because § 5-141d otherwise would be without effect. The state defendants counter that § 5-141d waives the state's immunity from liability, but does not waive the state's immunity from suit, and the plaintiffs' only recourse,

---

[10] Relying on statements made in this court's opinion in *Norwich* v. *Silverberg*, 200 Conn. 367, 511 A.2d 336 (1986), the dissent concludes that the plaintiffs, as creditors, are within the zone of interest protected by § 5-141d. The claimants in *Norwich*, however, were not creditors of the employee seeking indemnification, and those statements relied upon by the dissent, therefore, were dicta that have no precedential value for the present case.

therefore, is to file a claim with the claims commissioner. We agree with the state defendants.[11]

"[T]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . *Antinerella* v. *Rioux*, 229 Conn. 479, 489, 642 A.2d 699 (1994)." (Internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 80–81, 818 A.2d 758 (2003). We previously recited the standard of review for a claim of lack of subject matter jurisdiction in part I of this opinion, and therefore, we begin our plenary review of Gordon's cross claim.

"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Thus, this process requires us to consider all relevant sources of the meaning of the language at issue, without having to cross any threshold or thresholds of ambiguity. Thus, we do not follow the plain meaning rule.

---

[11] The trial court determined that both the plaintiffs' complaint and Gordon's cross claim were barred by sovereign immunity because they did not fall within the clear provisions of § 5-141d (a), noting that the federal court had not concluded that Mak had been acting in the discharge of his employment or that his act or omission was not wanton, reckless or malicious. We do not address this conclusion because we have determined that the plaintiffs lacked standing and that Gordon's cross claim is barred by sovereign immunity because § 5-141d does not permit suit against the state.

"In performing this task, we begin with a searching examination of the language of the statute, because that is the most important factor to be considered. In doing so, we attempt to determine its range of plausible meanings and, if possible, narrow that range to those that appear most plausible. We do not, however, end with the language. We recognize, further, that the purpose or purposes of the legislation, and the context of the language, broadly understood, are directly relevant to the meaning of the language of the statute.

"This does not mean, however, that we will not, in a given case, follow what may be regarded as the plain meaning of the language, namely, the meaning that, when the language is considered without reference to any extratextual sources of its meaning, appears to be *the* meaning and that appears to preclude any other likely meaning. In such a case, the more strongly the bare text supports such a meaning, the more persuasive the extratextual sources of meaning will have to be in order to yield a different meaning." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Courchesne*, 262 Conn. 537, 577–78, 816 A.2d 562 (2003).

We employ additional rules of statutory construction with regard to a statute that is claimed to waive the state's sovereign immunity. "[B]ecause the state has permitted itself to be sued in certain circumstances, this court has recognized the well established principle that statutes in derogation of sovereign immunity should be strictly construed. . . . Where there is any doubt about their meaning or intent they are given the effect which makes the least rather than the most change in sovereign immunity. . . . Further, this court has stated that the state's sovereign right not to be sued without its consent is not to be diminished by statute, unless a clear intention to that effect on the part of the

legislature is disclosed . . . ."[12] (Internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety,* supra, 263 Conn. 82.

Sovereign immunity is comprised of two concepts, immunity from liability and immunity from suit. "In *Bergner* v. *State,* [144 Conn. 282, 285–86, 130 A.2d 293 (1957)], this court recognized the distinction between immunity from suit and immunity from liability. There is, of course, a distinction between sovereign immunity from suit and sovereign immunity from liability. Legislative waiver of a state's suit immunity merely establishes a remedy by which a claimant may enforce a valid claim against the state and subjects the state to the jurisdiction of the court. By waiving its immunity from liability, however, the state concedes responsibility for wrongs attributable to it and accepts liability in favor of a claimant. *Greenfield Construction Co.* v. *Dept. of State Highways,* 402 Mich. 172, 193, 261 N.W.2d 718 (1978).

"The court in *Bergner* concluded that a statute that explicitly waived immunity from suit should be construed as implicitly waiving immunity from liability,

[12] This court has recognized two other exceptions to sovereign immunity involving declaratory judgments, when: (1) a declaratory judgment is requested based on a substantial claim that the state or one of its officers violated a plaintiff's constitutional rights; *Doe* v. *Heintz,* 204 Conn. 17, 31, 526 A.2d 1318 (1987); and (2) a declaratory judgment is sought based on a substantial allegation of wrongful conduct to promote an illegal purpose in excess of an officer's statutory authority. *Antinerella* v. *Rioux,* 229 Conn. 479, 497, 642 A.2d 699 (1994). The plaintiffs and Gordon claim that these exceptions to sovereign immunity apply in the present case. This action seeking a declaratory judgment is really tantamount, however, to an action for damages. The complaint requests that the trial court declare that the estate of Mak is entitled to indemnification pursuant to § 5-141d (a) and order Wyman, the comptroller, to settle the demand from Gordon for indemnification. Because the plaintiffs seek a declaratory judgment that establishes that Mak's estate is entitled to indemnification and an order to Wyman to authorize payment, we construe the plaintiffs claim as one for monetary damages. The declaratory judgment exceptions therefore are not applicable.

because, otherwise, the waiver of suit would be meaningless. *Bergner* v. *State,* supra, 144 Conn. 287. . . . This court reasoned that [i]t would be utterly useless and meaningless to permit a suit which could not end otherwise than in a judgment for the defendant. [Id.] Thus, the court concluded that the waiver of immunity from suit impliedly included a waiver of immunity from liability. See id., 288. We did not address, however, whether in the reverse situation—when there is an explicit waiver of immunity from liability but not a waiver of immunity from suit—a waiver of immunity from suit should be implied." (Citations omitted; internal quotation marks omitted.) *Martinez* v. *Dept. of Public Safety,* supra, 263 Conn. 79–80. In *Martinez,* we recently concluded that an explicit waiver of immunity from liability did not implicitly include a waiver of immunity from suit. Id., 80.

Our conclusion in the present case is controlled by our ruling in *Martinez,* wherein we concluded that an analogous statute that provided for indemnification of state police officers and others, General Statutes § 53-39a, constituted a waiver of immunity from liability, but not a waiver of immunity from suit. Id., 83.[13] We therefore determined that the plaintiff's indemnity claim could be satisfied only by the filing of a claim with the claims commissioner, and not by filing suit. Id., 84–85. The same result applies in the present case.

Section 5-141d (a) contains no express waiver of immunity from suit. Section 5-141d (a) provides in rele-

[13] The General Assembly recently amended § 53-39a, effective June 3, 2003, adding a sentence at the end of the existing statute. See Public Acts 2003, No. 03-97, § 2 (P.A. 03-97). As amended, § 53-39a now provides in relevant part: "Such officer may bring an action in the Superior Court against such employing governmental unit to enforce the provisions of this section." P.A. 03-97, § 2. The legislative history of P.A. 03-97 makes clear that the purpose of the amendment was to end the disparate treatment of municipal police officers and state police officers that resulted from our decision in *Martinez.* During the legislative debate on P.A. 03-97, Representative Michael P. Lawlor stated: "[T]he Supreme Court attempted to interpret our statute and concluded, I believe, erroneously, that State Police should be treated differently than local police officers. This amendment makes it clear that the State Police officers may bring an action in Superior Court against an employing governmental unit to enforce the provisions of the existing law." 46 H.R.

vant part: "The state shall save harmless and indemnify any state officer or employee . . . from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious."[14]

Additionally, unlike many other statutes, § 5-141d makes no reference to allowing a suit against the state. "A review of analogous statutes demonstrates that when the legislature has intended to waive immunity from suit in other contexts, it clearly has expressed such an intent through explicit language in the text of the statute. See, e.g., General Statutes § 4-61 (a) (authorizing those who have entered into public works contract with state to 'bring an action against the state'); General Statutes § 12-369 (stating that '[a]ctions may be brought against the state' for purpose of quieting title to property); General Statutes § 12-572 (f) (allowing off-track betting facility operators with contracts with state to 'bring an action against the state' to settle any disputed claims under contract); General Statutes § 52-556 (granting 'right of action against the state' to recover damages for any injury to person or property caused by a state employee negligently operating state owned motor vehicle)." *Martinez* v. *Dept. of Public Safety*, supra, 263 Conn. 85–86.

Moreover, there is no legislative history concerning § 5-141d indicating that the legislature intended to

Proc., Pt. 9, 2003 Sess., p. 2803. Nothing in the text of P.A. 03-97 or its accompanying legislative history suggests that we should disavow the *Martinez* analysis, which we also employ herein.

[14] The plaintiffs concede, in their brief to this court, that the language of § 5-141d waives immunity from liability, stating: "By its unambiguous words . . . § 5-141d is a waiver of sovereign immunity as it applies to liability. The statute does not explicitly state, however, that the legislature waived immunity as it applies to filing suit."

waive immunity from suit. Section 5-141d, originating as Senate Bill No. 737, was debated in the labor committee, on the floor of the House of Representatives, and on the floor of the Senate. See, e.g., Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 1, 1983 Sess., pp. 270–72; 26 H.R. Proc., Pt. 21, 1983 Sess., pp. 7491–7501; 26 S. Proc., Pt. 9, 1983 Sess., pp. 2840–43. None of these discussions suggested that the legislature intended to authorize a waiver of immunity from suit.

Finally, the legislature was aware of the statutes concerning the claims commissioner when it enacted § 5-141d. General Statutes § 4-142[15] provides that all claims against the state should proceed through the claims commissioner unless suit is authorized expressly by law. "[T]he legislature is presumed to have acted with knowledge of existing statutes and with an intent to create one consistent body of laws." *Zachs* v. *Groppo*, 207 Conn. 683, 696, 542 A.2d 1145 (1988). "The legislature thus presumably enact[s] [sovereign immunity statutes] with knowledge of our statutes requiring any person with a claim against the state to file such claim with the state claims commissioner . . . ." *Martinez* v. *Dept. of Public Safety*, supra, 263 Conn. 84. Furthermore, "[t]his court previously has acknowledged that we find no authority, and we know of none, standing for the proposition that recourse to the claims commissioner is an inadequate remedy as a matter of law. We reject the implied assertion that the claims commissioner would not resolve fairly a dispute against the state." (Internal quotation marks omitted.) Id., 86.

We conclude, as we did in *Martinez*, that § 5-141d does not waive the state's sovereign immunity from suit.[16] Accordingly, the trial court correctly dismissed Gordon's cross claim against the state defendants.

[15] General Statutes § 4-142 provides in relevant part: "There shall be a Claims Commissioner who shall hear and determine all claims against the state . . . ."

[16] The dissent disagrees with our conclusion and pronounces that *Martinez*, an en banc decision of this court issued only months ago, was wrongly decided. We perceive no substantive difference between the reasoning of

Gordon claims, however, that General Statutes § 52-29,[17] and Practice Book §§ 17-55[18] and 17-56,[19] impliedly

the dissent in the present case and the analysis in Justice Norcott's dissent, which was joined by Justices Borden and Palmer, in *Martinez*. The en banc majority in *Martinez* rejected that analysis and, as Justices Borden and Norcott recognize in their concurrence in the present case, that recent ruling should not be disturbed. "A change in the constituency of th[e] court is not a sufficiently compelling reason to warrant departure from a recently established construction of a statute." *Taylor v. Robinson*, 196 Conn. 572, 578, 494 A.2d 1195 (1985), appeal dismissed, 425 U.S. 1002, 106 S. Ct. 1172, 89 L. Ed. 2d 291 (1986).

"[T]he doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it. . . . Stare decisis is justified because it allows for predictability in the ordering of conduct, it promotes the necessary perception that the law is relatively unchanging, it saves resources and it promotes judicial efficiency. . . . It is the most important application of a theory of decisionmaking consistency in our legal culture and it is an obvious manifestation of the notion that decisionmaking consistency itself has normative value." (Citations omitted; internal quotation marks omitted.) *George v. Ericson*, 250 Conn. 312, 318, 736 A.2d 889 (1999). We are further mindful that "[i]n assessing the force of stare decisis, our case law has emphasized that we should be especially cautious about overturning a case that concerns statutory construction." (Internal quotation marks omitted.) *Ferrigno v. Cromwell Development Associates*, 244 Conn. 189, 202, 708 A.2d 1371 (1998).

[17] General Statutes § 52-29 provides: "(a) The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment.

"(b) The judges of the Superior Court may make such orders and rules as they may deem necessary or advisable to carry into effect the provisions of this section."

[18] Practice Book § 17-55 provides: "A declaratory judgment action may be maintained if all of the following conditions have been met:

"(1) The party seeking the declaratory judgment has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations;

"(2) There is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; and

"(3) In the event that there is another form of proceeding that can provide the party seeking the declaratory judgment immediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternate procedure."

[19] Practice Book § 17-56 provides: "(a) Procedure in actions seeking a declaratory judgment shall be as follows:

"(1) The form and practice prescribed for civil actions shall be followed.

"(2) The prayer for relief shall state with precision the declaratory judg-

waive sovereign immunity. We disagree. Practice Book provisions cannot waive sovereign immunity, because only the legislature can authorize such a waiver. See *Martinez* v. *Dept. of Public Safety*, supra, 263 Conn. 82. Furthermore, § 52-29, concerning declaratory judgments, is not helpful because we have determined that the underlying action is, in fact, a claim for damages.[20] See footnote 12 of this opinion.

ment desired and no claim for consequential relief need be made.

"(3) Actions claiming coercive relief may also be accompanied by a claim for a declaratory judgment, either as an alternative remedy or as an independent remedy.

"(4) Subject to the provisions of Sections 10-21 through 10-24, causes of action for other relief may be joined in complaints seeking declaratory judgments.

"(5) The defendant in any appropriate action may seek a declaratory judgment by a counterclaim.

"(6) Issues of fact necessary to the determination of the cause may be submitted to the jury as in other actions.

"(b) All persons who have an interest in the subject matter of the requested declaratory judgment that is direct, immediate and adverse to the interest of one or more of the plaintiffs or defendants in the action shall be made parties to the action or shall be given reasonable notice thereof. If the proceeding involves the validity of a municipal ordinance, persons interested in the subject matter of the declaratory judgment shall include such municipality, and if the proceeding involves the validity of a state statute, such persons shall include the attorney general.

"The party seeking the declaratory judgment shall append to its complaint or counterclaim a certificate stating that all such interested persons have been joined as parties to the action or have been given reasonable notice thereof. If notice was given, the certificate shall list the names, if known, of all such persons, the nature of their interest and the manner of notice.

"(c) Except as provided in Sections 10-39 and 10-44, no declaratory judgment action shall be defeated by the nonjoinder of parties or the failure to give notice to interested persons. The exclusive remedy for nonjoinder or failure to give notice to interested persons is by motion to strike as provided in Sections 10-39 and 10-44.

"(d) Except as otherwise provided by law, no declaration shall be binding against any persons not joined as parties. If it appears to the court that the rights of nonparties will be prejudiced by its declaration, it shall order entry of judgment in such form as to affect only the parties to the action."

[20] The plaintiffs also assert that their declaratory judgment action should be excepted from the bar of sovereign immunity because in *Savage* v. *Aronson*, 214 Conn. 256, 266, 571 A.2d 696 (1990), this court stated that, "[w]e have excepted declaratory and injunctive relief from the sovereign immunity doctrine on the ground that a court may fashion these remedies in such a manner as to minimize disruption of government and to afford

The judgment is affirmed.

In this opinion BORDEN and NORCOTT, Js., concurred.

SULLIVAN, C. J., concurring. I agree with the majority's conclusion in this matter except on the issue of statutory interpretation. My position on this issue continues to be the same as set forth in my concurrence in *Mandell* v. *Gavin*, 262 Conn. 659, 672, 816 A.2d 619 (2003), and in the dissenting opinion by Justice Zarella, in which I joined, in *State* v. *Courchesne*, 262 Conn. 537, 597, 816 A.2d 562 (2003).

BORDEN, J., with whom NORCOTT, J., joins, concurring. I agree with and join the majority opinion. I write separately, however, to register my substantive agreement with the reasoning of part II of Justice Katz's dissenting opinion, although I do not join in its result.

In part II of her dissenting opinion, Justice Katz cogently analyzes why *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 818 A.2d 758 (2003), in which I joined Justice Norcott's dissent, was wrongly decided. I agree with Justice Katz in that regard, for all of the reasons stated in Justice Norcott's dissent therein; see id., 88–93; as well as all of the reasons stated by Justice Katz in the present case. Nonetheless, I decline to vote to overrule *Martinez* because it was an en banc decision that was very recently issued by this court. Under these circumstances, a due respect for stare decisis, especially in the area of statutory interpretation, counsels against such prompt judicial action.

KATZ, J., dissenting. I disagree with the majority's conclusion that the plaintiffs lack standing to seek

an opportunity for voluntary compliance with the judgment." (Internal quotation marks omitted.) Our opinion in *Savage* is not applicable to this case because the declaratory relief sought in the present case is effectively a claim for damages.

indemnification under General Statutes § 5-141d[1] because the interests of a creditor of a state employee's estate are not within the zone of interests sought to be protected by the statute. I also disagree with the majority's conclusion that § 5-141d does not abrogate sovereign immunity so as to permit state employees to bring an action in Superior Court against the state for

[1] General Statutes § 5-141d provides: "(a) The state shall save harmless and indemnify any state officer or employee, as defined in section 4-141, and any member of the Public Defender Services Commission from financial loss and expense arising out of any claim, demand, suit or judgment by reason of his alleged negligence or alleged deprivation of any person's civil rights or other act or omission resulting in damage or injury, if the officer, employee or member is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious.

"(b) The state, through the Attorney General, shall provide for the defense of any such state officer, employee or member in any civil action or proceeding in any state or federal court arising out of any alleged act, omission or deprivation which occurred or is alleged to have occurred while the officer, employee or member was acting in the discharge of his duties or in the scope of his employment, except that the state shall not be required to provide for such a defense whenever the Attorney General, based on his investigation of the facts and circumstances of the case, determines that it would be inappropriate to do so and he so notifies the officer, employee or member in writing.

"(c) Legal fees and costs incurred as a result of the retention by any such officer, employee or member of an attorney to defend his interests in any such civil action or proceeding shall be borne by the state only in those cases where (1) the Attorney General has stated in writing to the officer, employee or member, pursuant to subsection (b), that the state will not provide an attorney to defend the interests of the officer, employee or member, and (2) the officer, employee or member is thereafter found to have acted in the discharge of his duties or in the scope of his employment, and not to have acted wantonly, recklessly or maliciously. Such legal fees and costs incurred by a state officer or employee shall be paid to the officer or employee only after the final disposition of the suit, claim or demand and only in such amounts as shall be determined by the Attorney General to be reasonable. In determining whether such amounts are reasonable the Attorney General may consider whether it was appropriate for a group of officers, employees or members to be represented by the same counsel.

"(d) The provisions of this section shall not be applicable to any state officer or employee to the extent he has a right to indemnification under any other section of the general statutes."

indemnification because, although § 5-141d provides an express waiver of immunity from liability, it neither expressly nor implicitly waives immunity from suit. In reaching this conclusion, the majority determines that: (1) a waiver of immunity from liability is a concept that is distinct from, and does not confer implicitly, a waiver of immunity from suit; and (2) the legislature intended state employees to file for permission to sue the state with the claims commissioner under General Statutes § 4-160.[2] In my view, construing § 5-141d to be in derogation of sovereign immunity is required in order to give effect to the legislature's clearly expressed intention to obligate the state to indemnify its employees.

I

I begin with the issue of standing; see *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 485, 815 A.2d 1188 (2003); *Ramos* v. *Vernon*, 254 Conn. 799, 808, 761 A.2d 705 (2000); specifically, the question of whether the interests of creditors of an insolvent estate of a state employee are within the zone of interests intended to be protected by § 5-141d. The majority concludes that the right to pursue an indemnification action under § 5-141d is vested solely in the state employee because there is no express language in the statute or the legislative history to evince the legislature's intention that the employee's creditors may pursue such claims. I disagree with this narrow approach to determine the statute's zone of interest.

"Standing concerns [inter alia] the question whether the interest sought to be protected by the complainant is *arguably* within the zone of interests to be protected

[2] General Statutes § 4-160 (a) provides: "When the Claims Commissioner deems it just and equitable, he may authorize suit against the state on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable."

or regulated by the statute or constitutional guarantee in question." (Emphasis added; internal quotation marks omitted.) *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services,* 242 Conn. 152, 160, 699 A.2d 142 (1997); *State* v. *Nardini,* 187 Conn. 109, 113, 445 A.2d 304 (1982); *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 492, 400 A.2d 726 (1978). In *Norwich* v. *Silverberg,* 200 Conn. 367, 374–75, 511 A.2d 336 (1986), this court considered the purpose behind General Statutes § 7-101a, an analogous provision to the one in the present case, requiring that municipalities indemnify municipal employees for negligent actions occurring in the scope of employment. Then Chief Justice Peters, writing for the court, explained "the apparent purpose behind [the statute's] enactment. The statute is designed to furnish some relief for injustice that would otherwise attend our well-established doctrine of sovereign municipal immunity. . . . Absent such a statute, claimants injured by the misconduct of municipal officers and employees acting in the course of their official duties would be limited to recourse against individual tortfeasors. The legislature might reasonably have concluded that such limited recourse would be unfair *both to the injured claimant and to the municipal officer or employee. From the point of view of the claimant, he would be confronted with a defendant who might well lack the resources to provide adequate compensation for the claimant's injuries.* From the point of view of the municipal officer or employee, he would be required to shoulder ultimate liability, as well as the costs of defense, for conduct that was solely beneficial to his municipal employer. To remedy these distortions that the law of sovereign immunity would otherwise impose upon the fair allocation of the risks of accident and other tortious misconduct, the legislature provided for statutory

indemnification by municipalities to relieve individual municipal employees and officers of personal liability for injuries they cause, or are alleged to have caused, to third parties on behalf of their municipalities." (Citations omitted; emphasis added.) Id.

In my view, the dual purpose we recognized in *Norwich*, wherein the relevant statutory language was identical to that in § 5-141d; compare General Statutes § 7-101a with General Statutes § 5-141d; is equally applicable in the present case. Therefore, I would conclude that the plaintiffs, as creditors, are "arguably within the zone of interests to be protected or regulated by the statute"; (internal quotation marks omitted) *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, supra, 242 Conn. 160; and, accordingly, have standing to assert their claim for indemnification.

II

I next turn to the majority's conclusion that § 5-141d does not abrogate sovereign immunity so as to permit suit against the state. I recognize that its conclusion was driven by this court's recent decision in *Martinez* v. *Dept. of Public Safety*, 263 Conn. 74, 818 A.2d 758 (2003), in which we concluded that General Statutes § 53-39a waived the state's immunity from liability for indemnification of state police officers but not immunity from suit. I further recognize the importance of the rule of stare decisis in our judicial system. See generally *Conway* v. *Wilton*, 238 Conn. 653, 658–59, 680 A.2d 242 (1996). Nonetheless, we do not adhere rigidly to precedent when a decision is clearly in error and does not further the interests of justice. Id., 659–60; see *Craig* v. *Driscoll*, 262 Conn. 312, 328–29, 813 A.2d 1003 (2003). In my view, *Martinez* is such a case. I believe that the decision warrants further consideration, not because I did not have an opportunity to cast my vote on the question, but, rather, because *Martinez*, which

I believe was wrongly decided, was on the forefront of an issue having ramifications for the construction of numerous other statutes conferring rights to individuals and imposing attendant obligations on the state, as in the present case.

Accordingly, I turn to the issue of whether § 5-141d is in derogation of sovereign immunity. In accordance with our general principles of statutory construction, "[this] process . . . involves a reasoned search for the intention of the legislature. . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Babes* v. *Bennett*, 247 Conn. 256, 261–62, 721 A.2d 511 (1998). Moreover, "[o]ur analysis is more specifically illuminated by the well settled principle that when the state waives sovereign immunity by statute a party attempting to sue under the legislative exception must come clearly within its provisions, because [s]tatutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed . . . ." (Internal quotation marks omitted.) Id., 262. Finally, our analysis, for almost one century, has been guided by the rule that the legislature may waive the state's sovereign immunity "provided clear intention to that effect is disclosed by the use of express terms or by force of a necessary implication." (Internal quotation marks omitted.) *Dept. of Public Works* v. *ECAP Construction Co.*, 250 Conn. 553, 558–59, 737 A.2d 398 (1999); *Lacasse* v. *Burns*, 214 Conn. 464, 468, 572 A.2d 357 (1990); *Struckman* v. *Burns*, 205 Conn. 542, 558, 534 A.2d 888 (1987); *Duguay* v. *Hopkins*, 191 Conn. 222, 228, 464 A.2d 45 (1983); *Baker* v. *Ives*, 162

Conn. 295, 298, 294 A.2d 290 (1972); *Murphy* v. *Ives*, 151 Conn. 259, 262–63, 196 A.2d 596 (1963); *State* v. *Kilburn*, 81 Conn. 9, 11, 69 A. 1028 (1908).

The majority concludes, and I agree, that § 5-141d does not contain language that we typically would consider an explicit waiver of sovereign immunity. Cf. *Capers* v. *Lee*, 239 Conn. 265, 268 n.4, 273, 684 A.2d 696 (1996) (concluding that General Statutes § 52-556, which provides that "person injured . . . shall have a right of action against the state to recover damages for such injury" provides express waiver of sovereign immunity). The majority construes this language, however, solely as a waiver of immunity from liability, but not immunity from suit. It relies on the fact that this court has recognized a distinction between immunity from liability and immunity from suit and reasons that, although a waiver of immunity from suit may imply a waiver of liability, the reverse does not result by necessary implication. In my view, the majority misconstrues the nature of the distinction between immunity from suit and immunity from liability so as to disconnect concepts that are by necessity interrelated.

The distinction that underlies the majority's opinion was discussed in *Bergner* v. *State*, 144 Conn. 282, 284–86, 130 A.2d 293 (1957), wherein this court explained the source and nature of the rule of sovereign immunity: "It is a well-established rule of the common law that a state cannot be sued without its consent. . . . This rule has its origin in the ancient common law. The king, being the fountainhead of justice, could not be sued in his own courts. . . . However, the king as the source of justice could not well refuse to redress the wrongs done to his subjects. Consequently, a procedure was developed whereby the subject, by bringing a petition to the king and securing his accession, could litigate his claim in the courts. . . . While a petition lay for a wide variety of actions, mostly proprietary in nature,

it did not lie for torts because of the hoary maxim 'The king can do no wrong.' . . .

"From this history we see that there apparently were two principles at the foundation of the proposition that the king, and subsequently the state, could not be sued without consent. One was sovereign immunity from suit and the other was sovereign immunity from liability. . . . The distinction between immunity from suit and immunity from liability appears to have been recognized in *State* v. *Kilburn*, [supra, 81 Conn. 11], and *State* v. *Anderson*, 82 Conn. 392, 394, 73 A. 751 [1909]. The great majority of the courts of other jurisdictions make this same distinction and hold that a statute granting consent to sue the state merely provides a remedy to enforce such liability as the general law recognizes." (Citations omitted.)

Thus, the origin of this distinction is based on the premise that, on occasion, the king would waive his immunity from suit, thereby submitting himself to the jurisdiction of the courts, and that a concomitant waiver of liability would result, but only for those wrongs for which suit was permitted. In modern law, we have explained, "the state's waiver of its immunity from liability only arises after a prior determination that it has waived its immunity from suit, and that a waiver of immunity from suit does not necessarily imply a waiver of immunity *from all aspects of liability.*"[3] (Emphasis added.) *Shay* v. *Rossi*, 253 Conn. 134, 166–67, 749 A.2d 1147 (2000); accord *Lacasse* v. *Burns*, supra, 214 Conn. 469. Consistent with the foregoing principle, we have

---

[3] In accordance with the principle that "the state's waiver of its immunity from liability only arises after a prior determination that it has waived immunity from suit"; *Shay* v. *Rossi*, 253 Conn. 134, 166, 749 A.2d 1147 (2000); when the state has waived its immunity from liability, as the majority concedes it has in the present case, it is clear that the legislature implicitly has made a prior determination to waive its immunity from suit as a necessary predicate to that action.

concluded that a waiver of immunity from liability for damages does not also waive immunity from liability for an award of prejudgment interest; *Struckman* v. *Burns*, supra, 205 Conn. 556; or taxation of costs. *State* v. *Chapman*, 176 Conn. 362, 366, 407 A.2d 987 (1978); *State* v. *Anderson*, supra, 82 Conn. 394. Therefore, although we have recognized a *distinction* between immunity from suit and immunity from liability, we never have treated them as *disconnected* concepts such that a waiver of one was not accompanied by a waiver of the other to some extent.[4]

In *Bergner* v. *State*, supra, 144 Conn. 284, this court was faced with the specific question of whether a legislative enactment specifically granting the plaintiff a right to sue the state merely waived immunity from suit, as the defendant contended, or whether it also waived immunity from liability. The court reasoned that the defendant's construction rendered the statute "utterly useless and meaningless" because it granted the plaintiff nothing. Id., 287. The court noted that "[i]t is a cardinal rule of statutory construction that courts must presume that legislatures do not intend to enact useless legislation." Id. It further noted that "a statute

---

[4] The only circumstance in which this court has recognized a waiver of immunity from liability without inferring a concomitant waiver of immunity from suit is in the context of municipal immunity. See *Bergner* v. *State*, supra, 144 Conn. 285–86, and cases cited therein. This approach is a necessary corollary to the difference between the state's sovereign immunity and a municipality's governmental immunity. "A suit against a municipality is not a suit against a sovereign. Towns have no sovereign immunity, and are capable of suing and being sued . . . in any action. . . . Municipalities do, in certain circumstances, have a governmental immunity from liability. . . . But that is entirely different from the state's sovereign immunity from suit . . . ." (Citations omitted; internal quotation marks omitted.) *Murphy* v. *Ives*, supra, 151 Conn. 264; accord *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 26, 664 A.2d 719 (1995); see generally *Giannitti* v. *Stamford*, 25 Conn. App. 67, 78–79, 593 A.2d 140, cert. denied, 220 Conn. 918, 597 A.2d 333 (1991). Accordingly, a statute waiving a municipality's immunity, consistent with the source of that immunity, only waives immunity from liability.

conferring a privilege or a right carries with it by implication everything necessary to ensure the realization of that privilege or to establish that right in order to make it effectual and complete." Id., 288. Accordingly, the court looked beyond the "literal meaning of the words used in [the statute] to its history, to the language used in all its parts, and to its purpose and policy," concluding that the statute by necessary implication also waived immunity from liability and therefore abrogated sovereign immunity. Id.

Therefore, consistent with our approach in *Bergner*, the question before us is whether § 5-141d, when viewed in light of the statutory language, its legislative history and the policy that the statute was intended to effectuate, indicates the legislature's intent to abrogate sovereign immunity. As with any issue of statutory construction, we begin with the language of the statute. Section 5-141d (a) provides in relevant part: "The state *shall save harmless and indemnify* any state officer or employee . . . from financial loss and expense arising out of any claim . . . by reason of his alleged negligence or alleged deprivation of any person's civil rights . . . if the officer . . . [or] employee . . . is found to have been acting in the discharge of his duties or within the scope of his employment and such act or omission is found not to have been wanton, reckless or malicious." (Emphasis added.) In construing this language, we are not writing on a blank slate. In *Hunte* v. *Blumenthal*, 238 Conn. 146, 147–48, 680 A.2d 1231 (1996), this court, sitting en banc, considered whether foster parents were employees within the meaning of § 5-141d. The court unanimously proceeded from the premise that "[§] 5-141d [is] in derogation of sovereign immunity and therefore must be strictly construed." Id., 152; see id., 168 (*Callahan, J.*, dissenting). Because a conclusion to the contrary would have deprived the court of subject matter jurisdiction; *Martinez* v. *Dept. of Public Safety*,

supra, 263 Conn. 80–81; *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.,* 239 Conn. 93, 99, 680 A.2d 1321 (1996); this determination was essential to the holding in *Hunte.*

The court's conclusion in *Hunte* is consistent with our subsequent construction, in *Vibert* v. *Board of Education,* 260 Conn. 167, 173, 793 A.2d 1076 (2002), of essentially identical language contained in another statute. In *Vibert,* this court examined General Statutes § 10-235 (a), which provides in relevant part: "Each board of education *shall protect and save harmless* . . . any teacher . . . and the State Board of Education . . . *shall protect and save harmless* any . . . teacher or other [public school] employee . . . from financial loss and expense, including legal fees and costs, if any, arising out of any claim, demand, suit or judgment by reason of alleged negligence . . . or any other acts . . . resulting in any injury, which acts are not wanton, reckless or malicious, provided such teacher . . . was acting in the discharge of his or her duties or within the scope of employment . . . ." (Emphasis added.) *Vibert* v. *Board of Education,* supra, 171–72. The court concluded that the " 'protect and save harmless' language [is] indicative of a legislative intent to impose a *duty* of indemnification. . . . Thus, the 'protect and save harmless' language of § 10-235 (b) *clearly mandates* that a board of education indemnify a teacher for conduct falling within the purview of that subsection." (Citation omitted; emphasis added.) Id., 173. Therefore, in accordance with *Hunte* and *Vibert,* the legislature's use of mandatory language in § 5-141d evinced its clear intention that indemnification not be discretionary. See *Santiago* v. *State,* 261 Conn. 533, 540, 804 A.2d 801 (2002) (distinguishing mandatory from directory language); *Williams* v. *Commission on Human Rights & Opportunities,* 257 Conn. 258, 284–85, 777 A.2d 645 (2001) (same). The *only* way to give that

effect to the statute is to construe it to be in derogation of sovereign immunity so as to permit employees to enforce that right.

Nevertheless, the majority in the present case concludes that its construction does not render § 5-141d meaningless because employees have recourse to seek indemnification by filing a claim with the claims commissioner. There are two substantive flaws with this conclusion. First, it runs counter to the mandatory language that the legislature adopted because the claims commissioner has discretion whether to grant permission to sue the state; see footnote 2 of this dissenting opinion; or to award specified damages. See General Statutes § 4-158.[5] Indeed, because the right to indemnification under § 5-141d is predicated on certain factual findings—that the employee was acting in the discharge of his duties or within the scope of his employment and that the act was not wanton, reckless or malicious—the claims commissioner has broad latitude in making this decision. See *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 207, 579 A.2d 69 (1990) (scope of employment typically question of fact); *King* v. *Board of Education*, 203 Conn. 324, 327, 524 A.2d 1131 (1987) (same). In construing § 5-141d, the question before us is not, as the majority supposes, whether the commissioner will or will not be fair in exercising that discretion. The question is whether, by employing mandatory language, the legislature intended that state employees be *guaranteed* a right to indemnification so that they could proceed with the business of the state unhampered

[5] General Statutes § 4-158 provides in relevant part: "(a) The Claims Commissioner may approve immediate payment of just claims not exceeding seven thousand five hundred dollars. . . .

"(b) Any person who, having filed a claim for more than seven thousand five hundred dollars, wishes to protest an award of the Claims Commissioner under the provisions of this section may waive immediate payment and his claim shall be submitted to the General Assembly under the provisions of section 4-159. . . ."

by concerns as to whether they would incur personal liability for negligent acts. If so, resort to the claims commissioner clearly would not effectuate the legislature's intent.

Second, the majority's interpretation renders § 5-141d nothing more than a policy directive by the legislature— advising the claims commissioner under what circumstances to authorize such claims and providing notice to employees that they may assert such claims.[6] I am unaware of any other instance in which this court has construed a legislative enactment that expressly mandates a duty to have *no force of law*. This court generally eschews an interpretation that renders a statute a legal nullity. See, e.g., *Waterbury* v. *Washington*, 260 Conn. 506, 532, 800 A.2d 1102 (2002); *Green* v. *General Dynamics Corp.*, 245 Conn. 66, 75, 712 A.2d 938 (1998); *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 191, 592 A.2d 912 (1991). Indeed, had the legislature intended to issue what is tantamount to a policy directive, it was unnecessary to enact § 5-141d. A state employee, like any other person, may file a claim with the claims commissioner, who may approve immediate

[6] It is noteworthy that, when the legislature has intended to set forth a statement of policy, it has used express language to evince such an intention. See, e.g., General Statutes §§ 3-76b, 5-219a (a) and 10-27. Indeed, typically, when the legislature declares policy, it enacts other specific provisions to implement the policy. See, e.g., General Statutes § 8-242 (with regard to Connecticut Housing Finance Authority Act, "[i]t is further found, *as more particularly set forth in the plan of conservation and development for Connecticut* that the declared policy of the state is to discourage the development of areas which remain in their natural state and to encourage the further development and revitalization of the other areas of the state" [emphasis added]); General Statutes § 10a-221 (with regard to Connecticut Higher Education Supplemental Authority Act, "*[i]t is the purpose of this chapter* and policy of the state to provide a measure of financial assistance to students in or from the state, their parents and others responsible for the costs of their education and an alternative method to enable Connecticut institutions for higher education to assist qualified students to attend such institutions, all to the public benefit and good, *to the extent and manner provided herein*" [emphasis added]).

payment of claims under $7500; General Statutes § 4-158 (a); or grant permission to sue the state for damages above that amount "on any claim which, in his opinion, presents an issue of law or fact under which the state, were it a private person, could be liable." General Statutes § 4-160 (a). Therefore, even prior to the enactment of § 5-141d, the claims commissioner could permit a state employee to sue the state for claims seeking damages above a certain amount if the facts were such that a private employer could have been held liable under a common-law indemnification action. See 2 Restatement (Second), Agency §§ 438 through 440 (1958). Moreover, the legislature's policy in this regard had been set forth in General Statutes § 4-165, which was enacted in 1959, prior to the 1983 enactment of § 5-141d.[7] See Public Acts 1983, No. 83-464, §§ 1 and 3 (amending existing § 4-165 to conform with language in newly enacted § 5-141d). Section 4-165, which prescribes the terms under which statutory immunity may be available, prescribes the same factual predicates as those set forth in § 5-141d.

The legislative history, although sparse, also supports the conclusion that the legislature did not intend, when enacting § 5-141d, that state employees enforce their right to indemnification by filing a claim with the claims commissioner under chapter 53 of the General Statutes. Testimony given in committee hearings and remarks made during legislative debates on Senate Bill No. 737, which eventually was enacted as § 5-141d, indicate that the bill was intended to provide a mechanism that previously did not exist in order to ensure indemnification protection. See Conn. Joint Standing Committee Hear-

[7] General Statutes § 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. . . ."

ings, Labor and Public Employees, Pt. 1, 1983 Sess., pp. 270–71; 26 S. Proc., Pt. 9, 1983 Sess., p. 2843; 26 H.R. Proc., Pt. 21, 1983 Sess., p. 7498.[8] Indeed, the legislative history makes no reference to bringing indemnification claims before the claims commissioner. Although we generally do not infer legislative intent from silence; *Spears* v. *Garcia*, 263 Conn. 22, 34–35, 818 A.2d 37 (2003); the legislature's expressed intent to create a new mechanism, coupled with its silence as to the claims commissioner, indicates that it did not intend for state employees to be required to resort to filing a claim with the claims commissioner, as any private individual would. Moreover, during committee hearings, Sandra Biloon, the director of personnel and labor relations and the deputy commissioner of administrative services explained that the "[b]ill [was] intended to provide . . .

---

[8] In hearings before the committee on labor and public employees, Sandra Biloon, the director of personnel and labor relations and the deputy commissioner of administrative services, testified to explain the effect of various bills pending that impacted her departments. See Conn. Joint Standing Committee Hearings, supra, pp. 266–75. Specifically, with respect to Senate Bill No. 737, Biloon stated: "The purpose [of the bill] is to clearly provide for the indemnification of state officers and employees from financial loss and expense suffered pursuant to a claim against the State under the provisions of Chapter 53 [of the General Statutes] and any other claims excepted from the protections of this Chapter.

"The change is needed to provide a clear indemnification procedure for all state employees and to [e]nsure that they will not personally bear the costs of legal fees. . . . This Bill is intended to provide more specific language than now exists and also comparability with similar legislation for teachers and administrators in higher education." Id., p. 271.

During debate in the Senate on the bill, Senator Howard T. Owens, Jr., explained: "On the bill itself . . . it establishes a mechanism for conditions of the indemnification of state employees and employees from financial loss and expenses arising out of any civil action against them based on their actions in the discharge of their duties." 26 S. Proc., supra, p. 2843. Similarly, during debate on the bill in the House of Representatives, Representative Richard D. Tulisano similarly explained: "[T]he bill establishes a mechanism for conditions of indemnification of state officers for financial loss [a]rising out of . . . civil actions which would be against them based on the discharge of their duties and within the scope of their employment." 26 H.R. Proc., supra, p. 7498.

comparability with similar legislation for teachers and administrators in higher education." Conn. Joint Standing Committee Hearings, supra, p. 271. As previously noted, we have construed § 10-235, the provision indemnifying teachers, as imposing a mandatory duty. See *Vibert* v. *Board of Education*, supra, 260 Conn. 173–74. This court has, in the past, construed statutes as abrogating sovereign immunity when consistent with furthering a legislative intent to afford a right to a class of individuals or to encompass substantive rights not expressly conferred by abrogation. See *Babes* v. *Bennett*, supra, 247 Conn. 268–71 (where state waived immunity under General Statutes § 52-556, permitting wrongful death claim, legislative history indicated state not immune from allocation of damages under General Statutes § 52-572h despite no waiver of immunity therein); *Mahoney* v. *Lensink*, 213 Conn. 548, 556–61, 569 A.2d 518 (1990) (rejecting contention that, by failing to provide express waiver of sovereign immunity, legislature intended for patients in state mental hospitals to bring claims to claims commissioner); *Mahoney* v. *Lensink*, supra, 558 ("necessary implication of the purposes sought to be served by the enactment of the patients' bill of rights that the legislature intended to provide a direct cause of action against the state and thus to waive its sovereign immunity").

In sum, we are left with an imperfect choice when construing the language in § 5-141d. The statute does not include language that we typically would construe as an express waiver of sovereign immunity. It does, however, affirmatively impose on the state a duty to indemnify its employees when they are sued by third persons in their individual capacity for negligent acts. We can apply a mechanistic, formal approach that would render the indemnification provision "utterly useless and meaningless"; *Bergner* v. *State*, supra, 144 Conn. 287; or we can "look beyond the literal meaning

of the words used"; id., 288; to further the statute's purpose of ensuring that state employees may conduct the state's business without concern about incurring personal liability for mere negligence. In my view, the latter is the correct approach.

Accordingly, I respectfully dissent.